# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STACY MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02211-JRS-DML |
| | ) | |
| ASCENSION HEALTH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### (ECF NO. 34)

Plaintiff Stacy Marshall ("Marshall"), by counsel, brought this action against named Defendants Ascension, St. Vincent Medical Group ("SVMG"), and St. Vincent Salem Hospital, Inc.[1]  (*See* Compl., ECF No. 1.)  Pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, Marshall alleges Defendants (1) harassed her based on her gender to create a hostile work environment; (2) discriminated against her based on her gender; (3) retaliated against her for complaining of harassment and discrimination; and (4) caused intentional infliction of emotional distress.  Defendants move for summary judgment on all claims.  The Court, having considered the Motion, finds that the Motion should be **GRANTED**.

---

[1] Defendants assert that Ascension Medical Group, Inc. and St. Vincent Medical Group, Inc. have been misidentified as "Ascension" and "St. Vincent Medical Group" in the complaint. (*See* Def.'s Answer.)  But, both Ascension Medical Group, Inc. and St. Vincent Medical Group, Inc. have appeared in this matter and filed answers to Plaintiff's complaint, thus waiving any challenge to notice.  *See* Fed. R. Civ. P. 12(h).  Neither party has argued otherwise.

# I. Background

## A. *Marshall's Employment*

Stacy Marshall began work as a Registered Nurse at Washington County Memorial Hospital in 1987. (*See* Dep. Stacy Marshall (hereinafter Marshall Dep.) 21:20-24, ECF No. 36-5 at 4–5; Answer 4, ECF No. 11.) In 2010, when Ascension acquired St. Vincent Health, Inc., Washington County Memorial Hospital became St. Vincent Salem Hospital. (*Id.* at 22:17-21.) St. Vincent Salem is a wholly-owned subsidiary of St. Vincent Health, Inc., which is not a party in this matter. (Decl. Dana Muntz (hereinafter Muntz Decl.) ¶ 5.) St. Vincent Health, Inc. is a wholly-owned subsidiary of Ascension. (*Id.* at ¶ 6.) SVMG is a separate subsidiary of Ascension. (*Id.* at ¶ 7.)

Around 2013, Marshall began reporting to Brittney Garloch ("Garloch") and Kevin Lyles ("Lyles"). (*See* Marshall Dep. 33:2–34:1, 38:10-12; Decl. Brittney Garloch (hereinafter Garloch Decl.) ¶ 4.) Both Garloch and Lyles reported to Dana Muntz ("Muntz"), who at all times relevant to this matter was Chief Nursing Officer and Administrator for St. Vincent Salem Hospital. (Marshall Dep. 38:12–25, ECF No. 36-5 at 13; Muntz Decl. ¶ 2–3, ECF No. 36-1 at 2.)

## B. *Marshall's Discipline Related to Noel Putman*

In 2009, shortly before Ascension acquired St. Vincent Health, Marshall started working with Noel Putman, a Certified Registered Nurse Anesthetist ("CRNA") in St. Vincent Salem's Surgery Department. (Marshall Dep. 24:1–6; 45:17–46:13.) Putman, at all times relevant to this matter, was employed by SVMG. (*Id.* at 46:23–

47:20.)  Putman is the only CRNA employed by St. Vincent Medical Group serving St. Vincent Salem.  (Marshall Dep. 47:12–25, ECF No. 36-5 at 17; Potter Decl. ¶ 6, ECF No. 36-3 at 2.)

On or around August 23, 2013, Putman complained to Garloch that Marshall was putting unsolicited notes in his locker and had argued with him unprofessionally in the workplace.  (Marshall Dep. 75:10–76:12; Garloch Decl. ¶ 5, Ex. 1.)  Garloch, Lyles, and Valerie Potter, then Human Resources Manager for St. Vincent Salem, spoke with Marshall and directed her to stop putting notes in Putman's locker, to act appropriately in the workplace, and to avoid communication with Putman unless specifically related to a patient.  (Decl. Valerie Potter (hereinafter Potter Decl.) ¶¶ 3, 6–7, Ex. 1, ECF No. 36-3 at 2–3.)

On or around September 18, 2013, Marshall stopped to talk with Putman about his "nerve to complain about her" to Garloch.  (Marshall Dep. 78:19–25, 85:9–15, ECF No. 36-5 at 39, 42.)  Putman subsequently complained to Garloch again about Marshall, claiming Marshall had "cornered him to discuss their interpersonal conflict." (Garloch Decl. ¶ 6, Ex. 2; *see also* Potter Decl. ¶ 8.)   Garloch admonished Marshall about maintaining professional boundaries in the workplace.  (*Id.*)  Marshall responded she wished to help Putman "fix his personality."  (*Id.*)  Garloch then escalated the issue to Muntz, reporting the multiple complaints from Putman alleging that Marshall was harassing him.  (Decl. Dana Muntz (hereinafter Muntz Decl.) ¶ 8, ECF No. 36-1 at 3.)  Potter and Muntz determined Marshall had disregarded specific instructions to avoid speaking with Putman regarding personal issues.  (Potter Decl.

- 3 -

¶ 9, ECF No. 36-3 at 3; Muntz Decl. ¶ 9, ECF No. 36-1 at 3.)  On or around September 19, 2013, Potter and Muntz jointly issued another warning to Marshall reiterating their instructions to not speak with Putman outside of patient matters.  (*See* Muntz Decl., Ex. 1, ECF No. 36-1 at 8.)

On or around April 15, 2014, Putman and Marshall had a disagreement in the operating room during which Putman told Marshall, "Don't tell me how to do my fucking job."  (Garloch Decl. ¶ 8, ECF No. 36-2 at 3; *see also* Potter Decl. ¶ 10; Muntz Decl. ¶ 10.)  Putman later apologized to Marshall.  (Garloch Decl., Ex. 3, ECF No. 36-2 at 11.)  Two days later on April 17, 2018, Marshall spoke with Garloch about the incident in the operating room.  (*Id.*)  Putman separately reported to Garloch that Marshall had confronted him again to discuss their ongoing personal conflict.  (*Id.* at ¶ 8.)  Garloch reported the issue to Muntz and Potter, who determined Marshall was making the work environment uncomfortable for her co-workers.  (Muntz Decl. ¶ 11, ECF No. 36-1 at 3; Potter Decl. ¶ 10, ECF No. 36-3 at 3.)  Subsequently, on April 21, 2014, Muntz and Potter issued a written warning to Marshall for continuing to dis-regard instructions not to speak with Putman except about patient care.  (Muntz Decl. ¶ 11, Ex. 2; Potter Decl. ¶ 10, Ex. 3.)

On May 5, 2014, Potter, Muntz, Garloch, and Lyles held a meeting with Putman and Marshall to address their persistent issues.  (Muntz Decl. ¶ 12; Garloch Decl. ¶ 9; Potter Decl. ¶ 12.)  During the meeting, Putman read from a prepared statement explaining his belief that Marshall had romantic feelings toward him and that he felt harassed.  (Muntz Decl. ¶ 13; Garloch Decl. ¶ 9; Potter Decl. ¶ 13.)

Shortly after, on May 15, 2014, Putman again expressed concerns about Marshall to Muntz. (Muntz Decl. ¶ 14, ECF No. 36-1 at 4; Potter Decl., Ex. 4, ECF No. 36-3 at 14.) Putman described several instances in which Marshall engaged in personal conversations with him in direct contravention of Muntz' and Potter's orders. (Potter Decl., Ex. 4.) In response, Potter and Muntz met with Marshall on or around May 20, 2014 and directed her to take a leave of absence and seek counseling from St. Vincent Salem's Employee Assistance Program ("EAP"). (Muntz Decl. ¶ 16; Potter Decl. ¶ 13.) The meeting is recorded in both Muntz' and Potter's contemporaneous notes. (*See* Muntz Decl., Ex. 4; Potter Decl., Ex. 4.) Marshall began EAP counseling on May 20, 2014 and returned to work three days later. (Marshall Dep. 133:11–136:19, ECF No. 36-5 at 69–72.)

On or around January 29, 2015, Marshall again approached Putman to ask why he was mad at her and why he could not forgive her. (Marshall Dep. 146:17–150:9.) Putman reported the incident to Muntz that same day. (Muntz Decl. ¶ 17, Ex. 5, ECF No 36-1 at 4–5, 17.) On February 2, 2015, Muntz and Potter again met with Marshall and Putman to discuss Putman's complaint. (Muntz Decl. ¶ 18; Potter Decl. ¶ 14.) Marshall admitted speaking to Putman despite Muntz and Potter's continuing instructions, but stated the discussion regarded a patient's IV. (Muntz Decl. ¶ 18; Potter Decl. ¶ 14.) Muntz and Potter both determined that Marshall acted inappropriately, in part because they believed there would be no reason for Marshall to ask a nurse anesthetist such as Putman about an IV. (Muntz Decl. ¶ 18; Potter Decl. ¶ 14.) The meeting is recorded in Potter's contemporaneous notes. (*See* Potter Decl., Ex. 5.)

Muntz and Potter issued Marshall a written warning to Marshall and placed her on unpaid suspension.  (*See* Muntz Decl., Ex. 6; Potter Decl., Ex. 6.)

Following the January 2015 incident, Potter and Muntz determined Marshall and Putman should be separated.  (Muntz Decl. ¶ 21; Potter Decl. ¶ 17.)  Because Putman could only perform his work as a CRNA in the Surgery Department, and because he was the only nurse anesthetist serving St. Vincent Salem, he could not be transferred.  (Muntz Decl. ¶ 22; Potter Decl. ¶ 18.)  Consequently, St. Vincent Salem ordered Marshall to transfer to an available position in a different department.  (Marshall Dep. 155:6–156:18, ECF No. 36-5 at 82–83; Muntz Decl. ¶ 23; Potter Decl. ¶ 19.)  Marshall chose the Medical/Surgery Department, where she started work in late February of 2015 and where she did not have contact with Putman.  (Muntz Decl. ¶ 23; Potter Decl. ¶ 19; Marshall Dep. 161:23–162:23.)  She worked approximately the same number of hours in her new role and received the same hourly rate.  (Marshall Dep. 40:5–13, 161:11–15; Potter Decl. ¶ 20, Ex. 7.)  St. Vincent Salem filled Marshall's previous position in the Surgery Department with a female nurse whose salary, according to Marshall, saved the hospital $30,000 per year.  (Marshall Dep. 183:8–184:14.)

Shortly after her transfer to the Medical/Surgery Department, Marshall began working in the Emergency Department.  (Marshall Dep. 162:25–163:9.)  There, she occasionally interacted with Putman.  (Potter Decl. ¶ 21.)  Around that time, Potter received complaints that Marshall was making her coworkers uncomfortable by gossiping and speaking about her relationship with Putman, and Putman complained to Potter that Marshall was defaming him to employees within the Emergency

Department. (*Id.*) Potter and Muntz interviewed numerous employees in the Emergency Department, including Marshall, to investigate the matter. (Muntz Decl. ¶ 25; Potter Decl. ¶ 22.) Marshall admitted to Muntz and Potter that she "had spoken with several people about her history with Putman and asked them to pray for her and for Putman." (Muntz Decl. ¶ 25; Potter Decl. ¶ 22.) Consequently, Muntz and Potter, citing Marshall's continued failure to follow instructions regarding appropriate workplace conduct and interactions with Putman, terminated Marshall's employment effective August 14, 2015. (Muntz Decl. ¶ 26; Potter Decl. ¶ 23; Marshall Dep., Ex. 16.) Marshall filed her Charge of Discrimination with the Equal Employment Opportunity Commission on April 4, 2016. (Marshall Dep., Ex. 19.)

### C. *Marshall's Allegations of Harassment*

Marshall alleges her first negative interaction with Putman occurred when he yelled at her during her training. (*Id.* at 51:6–52:7.) Marshall admits the harassment was not sexual at first. (*Id.* at 50:16–51:9.) Marshall also alleges Putman treated many of his coworkers poorly and it was widely known that he had, as she describes, "anger management problems." (*Id.* at 57:7–59:4.)

Marshall states she first knew that Putman's interactions with her "moved from that beratement then [*sic*] on to the sexual type" when he allegedly stared at her with a "beet red" face and, after Marshall inquired of him, stated, "you're my problem." (*Id.* at 61:15–62:13.) Additionally, Marshall states Putman made sexual remarks to her on at least two other occasions. First, when she said she was going to "take all of this off," referring to heart monitor leads hooked up to patient, to which Putman

allegedly responded, "I've been waiting to hear [you] say that for a long time." (*Id.* at 67:22–68:5, Ex. 19.) Second, when Putman leaned over her shoulder and said, "I see something," which Marshall believes referred to his view down her shirt. (*Id.* at 107:18–108:22.)

Aside from these two specific exchanges, Marshall makes more general allegations. Namely, she claims Putman "dart[ed] in front of her" approximately five times. (*Id.* at 63:8–10, 65:4–10.) She alleges Putman stared at her from down the hallway approximately five times. (*Id.* at 65:11–16.) She also alleges Putman would "flip [her and her coworkers] off" (*id.* at 66:17–20, 67:14–15) and strike her worktable to get her attention (*id.* at 188:3–189:19). Without other factual allegations, Marshall summarily asserts that harassment from Putman happened consistently during her time at St. Vincent Salem. (*See, e.g.*, *id.* at 210:12–17.)

All of this behavior ostensibly occurred prior to Marshall's discipline on August 23, 2013. (*Id.* at 68:14–17.) However, Marshall could not recall whether she reported any of these interactions with Putman to either Garloch or Lyles prior to that time. (*Id.* at 68:18–69:8.) The only evidence of a formal complaint by Marshall to her supervisors regarding Putman comes from May 5, 2014. (*Id.* at 106:6–111:7; *see also supra* Section B, p. 4.)

### D. *Marshall's Excluded Allegations Regarding Dr. Reisert*

Marshall alleges, for the first time, in her response to Defendants' motion that Dr. Reisert, an ER doctor, "subjected [her] to sexual and sexist talk." (Pl.'s Resp. 6, ECF No. 42.) However, Marshall "may not amend [her] complaint through arguments in

[her] brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). Additionally, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974)). This rule "is a condition precedent with which Title VII plaintiffs must comply." *Id.* An EEOC charge might encompass claims in a complaint that are "like or reasonably related." *Id.* Thus, allegations reasonably related to those contained in the EEOC charge may be brought in later litigation. *Id.* However, to qualify as reasonably related, "the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* at 501. Because neither Marshall's complaint nor her EEOC charge mentioned Dr. Reisert or his alleged behavior, she is precluded from including these allegations in this matter.

## II.  Legal Standard

Defendants move for summary judgment as a matter of law. Summary judgment as a matter of law is proper when there is no genuine dispute of material fact in the record. *See Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019) (citing Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). A dispute as to a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material only if it might affect the outcome of the suit. *Id.* at 248.

When reviewing a motion for summary judgment, a court must draw every reasonable inference from the underlying facts in favor of the non-moving party. *Id.* at 254. However, a court must also view the evidence "through the prism of the substantive evidentiary burden, *id.* at 254, and does not draw "inferences that are supported only by speculation or conjecture," *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Determining the credibility and relative weight of facts, unless those facts are clearly feigned, are jury functions and must not be considered in evaluating a motion for summary judgment. *See Anderson*, 477 U.S. at 255.

## III. Discussion

### A. *Ascension and SVMG Are Not Proper Defendants Under Title VII*

An action under Title VII must be brought against a plaintiff's employer. *See* 42 U.S.C. §§ 2000e–2(a). An entity may be liable under Title VII as an employer if it maintained an employment relationship with a plaintiff. *See Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001) (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991)). It is "deeply engrained in our economic and legal systems" that an entity is not liable for the acts of its subsidiaries or affiliates. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). This is true unless the entity either causes the wrongful conduct or the conditions for "piercing the corporate veil" have been satisfied. *See Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 771 (7th Cir. 2007). An affiliated entity may forfeit its limited liability if it "takes actions for the sole purpose of avoiding liability under the discrimination laws or where the affiliated [entity] might have directed the discriminatory act, practice, or policy of which the employee

is complaining." *Worth*, 276 F.3d at 260 (citing *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 941 (7th Cir. 1999)). Otherwise, an affiliated entity's "veil of limited liability" will be "pierced" only if (1) "there is such unity of interest and ownership that separate personalities of the two entities no longer exist[]" and (2) adherence to the affiliated entity's separate legal identity "would sanction a fraud or promote injustice." *See Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir. 1985) (citations omitted); *see also Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519 (7th Cir. 1991) (applying the *Van Dorn* test). If either Ascension or SVMG "satisf[ies] any of these scenarios, it is a proper defendant under Title VII." *Id.* But, here, neither Defendant satisfies any of these scenarios.

As a preliminary matter, by agreement of the parties, "St. Vincent Salem employed Plaintiff and is the only proper defendant . . . Both Ascension Health and St. Vincent Medical Group should be dismissed." (Case Management Plan 2, ECF No. 17.) The Court approved the Case Management Plan as an Order of the Court on September 20, 2017. (*Id.* at 11.) The Court approved an amended version of the Case Management Plan, with the same terms regarding the dismissal of Ascension Health and St. Vincent Medical Group, on May 4, 2018. (Am. Case Management Plan, 2, 11, ECF No. 28.)

Despite the Court's Order apparently resolving this issue, the parties have continued to address the dismissal of Ascension Health and St. Vincent Medical Group in subsequent filings. (*See, e.g.*, Def.'s Br. 2, ECF No. 35; Pl.'s Resp. 9–10, ECF No. 42.) Still, under the aforementioned standards, the Court affirms that Ascension and

SVMG are not proper defendants. There is no evidence that either Ascension or SVMG maintained a direct employer-employee relationship with Marshall. *See Knight*, 950 F.2d at 380. In fact, on October 5, 2017, Defendants requested that Marshall admit facts that would conclusively preclude finding of an employer-employee relationship between either Ascension or SVMG and Marshall. (*See* Def.'s First Req. Admis. Pl. 5–9, ECF No. 36-4, Ex. 1.) Marshall's responses to Defendants' Requests for Admissions were due on November 6, 2017; however, Marshall failed to respond to these requests. (*See* Decl. of Emily L. Connor (hereinafter Connor Decl.) ¶¶ 3–5, ECF 36-4.) Pursuant to Federal Rule of Civil Procedure 36(a)(3), those requests must be deemed admitted.

Further, Marshall does not claim that piercing the veil of either Ascension or SVMG is proper under the *Van Dorn* standard. *See* 753 F.2d at 569–70. Additionally, Marshall does not contend that either Ascension or SVMG were set up for the purposes of avoiding liability under Title VII. *See Papa*, 166 F.3d at 941. Rather, Marshall states that she was employed by St. Vincent Salem and her alleged harasser, Noel Putman, was employed by SVMG. (*See* Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. (hereinafter Pl.'s Resp.) 9, ECF No. 42.) Accordingly, she argues that "any decision from management . . . involved policies and cooperation from both entities." *Id.* Marshall then summarily asserts that because St. Vincent Salem and SVMG are "subject to policies of Ascension, treating the three as a single employer is not only sensible but consistent with Seventh Circuit guidance." (Pl.'s Resp. 9–10, ECF No. 42.) Marshall cites no case in support of this bare conclusion. In fact, the Seventh Circuit has

explicitly declared otherwise.  *See Bright*, 510 F.3d at 771 (stating that a parent company that shares policies with its subsidiaries, without showing that it counseled any unlawful acts, does not make it responsible for Title VII violations).  If mere overlap of policies sufficed for Title VII liability, every parent-subsidiary relationship would confer liability.  Treated generously, Marshall's argument resembles the "integrated enterprise" test for affiliate liability that has been explicitly abrogated in Title VII cases by the Seventh Circuit.  *See Papa*, 166 F.3d at 941–943.  In sum, Marshall has failed to demonstrate that either Ascension or SVMG are proper defendants.  Both parties should be dismissed from this case.

### B. *Marshall's Claims for Harassment Are Not Time Barred*

Regarding St. Vincent Salem's liability for harassment, Defendants argue Marshall's complaints are time barred.  Title VII provides a cause of action for plaintiffs injured by "unlawful employment practice[s]."  *See* 42 U.S.C. § 2000e–2.;  "To bring a Title VII claim, a plaintiff must file [a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")] within 300 days of the conduct underlying the claim."  *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (citing 42 U.S.C. § 2000e–5(e)(1)).  "Any complaint of conduct that occurred more than 300 days before the relevant EEOC charge is time barred."  *Id.* (citing *Chaudry v. Nucor Steel-Ind.*, 546 F.3d 832, 836–37 (7th Cir. 2008)).  Thus, the "critical questions" for Title VII claims are: "What constitutes an 'unlawful employment practice' and when has that practice 'occurred'?"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

To answer these questions, the Supreme Court in *Morgan* distinguished two types of "unlawful employment practices" under Title VII: discrete acts of discrimination and hostile work environments. *See* 536 U.S. at 110–14; § 2000e–2(a). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and "constitute[] a separate actionable 'unlawful employment practice'" under Title VII. "A discrete act 'occurred' on the day that it 'happened.'" *Morgan,* 536 U.S. at 110. Such discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

Here, Marshall filed her charge of discrimination with the EEOC on April 4, 2016. (*See* EEOC Charge of Discrimination 2, ECF No. 1-1, Ex. A.) Consequently, any alleged activity occurring before June 9, 2015 is outside of the 300-day limitations period and barred. *See* § 2000e–5(e); Fed. R. Civ. P. 6(a). Except for one, each of Marshall's factual allegations underlying her claims of discrimination occurred before June 9, 2015. (*See* Compl. 1–8, ECF No. 1.) Consequently, insofar as these allegations form independent bases for liability, they are time barred and not actionable under Title VII.

In contrast, Marshall's hostile work environment claim may be timely under the continuing violation doctrine, which "allows a plaintiff to get relief for time-barred acts by linking them with acts within the limitations period." *Shanoff v. Ill. Dep't of Human Servs.,* 258 F.3d 696, 703 (7th Cir. 2001); *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992). The Supreme Court in *Morgan* applied the continuing violation to hostile work environment claims. *See* 536 U.S. at 115. In such cases, because "the

incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." *Id.* at 118. Accordingly, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105.[2]

The only act within the limitations period of which Marshall complains regards Putman allegedly showing her a photograph of another employee with his shirt off. (*See* Pl.'s Resp. 4, ECF No. 42.) To determine whether multiple allegations comprise one actionable hostile work environment practice, a court looks to see if the incidents "involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120. Here, all of the alleged acts involve the same individual, Putman, and are at least abstractly related to the same pattern of alleged sexual discrimination. Therefore, especially because Marshall's claims fail on other grounds, the Court declines to find that Putman allegedly showing Marshall the photograph did not contribute to the alleged hostile work environment as a matter of law. Thus, *arguendo*, because at least one alleged incident contributing to the hostile work environment falls within the limitations period,

---

[2] Defendants argue the continuing violation doctrine permits recovery only "for acts which 'could not reasonably have been expected to be made the subject of a lawsuit when [they] first occurred because its character as a violation did not become clear until it was repeated during the limitations period.'" (ECF No. 35, Pl.'s Br. 13–14 (quoting *Whipple v. Taylor Univ., Inc.*, 162 F. Supp. 3d 1138, 1139 (7th Cir. 1997)).) However, this rule based on a plaintiff's awareness of an actionable offense was explicitly overruled by the Supreme Court in *Morgan*. *See* 536 U.S. at 106–08; *see also Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1139–40 (10th Cir. 2003) ("[*Morgan*] expressly held that the date on which a plaintiff becomes aware that he or she has an actionable Title VII claim is of no regard in the context of determining the timeliness of a hostile work environment claim."); *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 738–39 (5th Cir. 2017) (citing and affirming *Boyer*).

the single employment practice "occurred" within 300 days of Marshall's EEOC discrimination charge and is not time barred.

## C. *St. Vincent Salem is Not Liable for Coworker Harassment*

Even if Marshall's claim for a hostile work environment is not time barred; however, Title VII does not impose strict liability on employers for harassment in the workplace. Rather, vicarious liability "depends on whether the harasser is the victim's supervisor or merely a co-employee." *Parkins v. Civ. Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998). Under Title VII, "[a] supervisor is someone with power to *directly* affect the terms and conditions of the plaintiff's employment." *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 506 (7th Cir. 2004). A supervisor's authority 'primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee." *Vance v. Ball State Univ.,* 646 F.3d 461, 470 (7th Cir. 2011) (quoting *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 355 (7th Cir. 2002)).

Here, Putman does not fulfill the Seventh Circuit standard to be Marshall's supervisor. Putman did not have authority to hire, fire, demote, promote, transfer, or discipline Marshall. Marshall makes only one allusion to Putman's authority, stating in her complaint that she "began working with and at the direction of [Putman] . . . ." (Compl. ¶ 15, ECF No. 1.) However, there is no evidence in the record to

suggest Putman actually directed Marshall's day-to-day work.  Accordingly, the Court finds that Putman was, at all relevant times in this dispute, not Marshall's supervisor.

In the case of alleged harassment by a non-supervisor coworker, an employer may be held vicariously liable under Title VII "only if it 'knew or should have known' about the harassment and failed to take reasonable steps to remedy the harassment once it was on notice." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) (quoting *Berry v. Delta Airlines, Inc.* 260 F.3d 803, 811 (7th Cir. 2001)).  This rule is well established in the Seventh Circuit:

> If an employer takes reasonable steps to discover and rectify the harassment of its employees . . . it has discharged its legal duty.  An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made.  We are not to focus solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the employer's total response was reasonable under the circumstances as then existed.

*Id.* at 976 (quoting *Berry*, 260 F.3d at 811); *see also McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996); *Sutherland v. Wal-Mart Stores, Inc.*, 632 F.3d 990, 995 (7th Cir. 2011).  "[W]hether an employer's corrective response to sexual harassment is reasonable and adequate under the circumstances . . . may be resolved on summary judgment . . . ." *Berry*, 260 F.3d at 814.

Here, Defendants argue that St. Vincent Salem's response to Marshall's complaints were reasonable as a matter of law.[3]  An employer's response is reasonable if it is both timely and "reasonably likely to prevent the harassing conduct from recurring." *Parkins*, 163 F.3d at 1036 (citing *Saxton v. Am. Tel & Tel. Co.*, 10 F.3d 526, 536 (7th Cir. 1993)); *see also Berry*, 260 F.3d at 814.  This is true even when an employer could have done more to remedy a particular situation.  *See, e.g.*, *Saxton*, 10 F.3d at 536; *Berry*, 260 F.3d at 813.

St. Vincent Salem responded reasonably to Putman and Marshall's complaints. First, under Seventh Circuit precedent, it is a reasonable response to allegations of harassment to separate the two individuals involved in the dispute.  *See Saxton*, 10 F.3d at 536 (holding that an employer responded reasonably by transferring the alleged wrongdoer to a different department); *McKenzie*, 92 F.3d at 481 (determining an employer was reasonable to instruct the parties to have no further contact in the workplace).

Like in *McKenzie* and *Saxton*, St. Vincent Salem's primary objective was to prevent conflicts between Putman and Marshall by limiting their contacts with one another.  St. Vincent Salem was first put on notice of an issue between Putman and Marshall in August of 2013.  (*See supra* Section B, p. 3; Marshall Dep. 75:10–76:12;

---

[3] Defendants argue that Marshall has waived her right to argue that St. Vincent Salem is vicariously liable because she did not respond to this argument.  (*See* ECF No. 45, Def.'s Reply 10.)  In some cases, arguments not presented to a district court in response to summary judgment are waived.  *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999); *Williams v. Lovchik*, 830 F. Supp. 2d 604, 614 (S.D. Ind. 2011).  However, Plaintiff in this case at least briefly addressed St. Vincent Salem's liability for a hostile work environment.  (*See* ECF No. 42, Pl.'s Resp. 10 ("Defendants fostered a hostile work environment for Marshall by enabling Putman's behavior and willfully ignoring Marshall's plight . . . Accepting the ridiculous complaints of Putman as true and valid[] establishes Defendants' participation in creating a hostile work environment").)  Thus, the Court finds Marshall has not waived the argument.

Garloch Decl. ¶ 5, Ex. 1.) Marshall's supervisors acted first by restricting interactions between Marshall and Putman to patient issues in September of 2013, and second by separating them into different departments early in 2015. (Muntz Decl. ¶¶ 9–13, 15–16, 18, 20, 25; Potter Decl. ¶¶ 6–12, 14–16, 22.) Indeed, there is ample evidence that the response from St. Vincent Salem was both reasonable and effective but for Marshall's failure to comply with its instructions. (*See* Muntz Decl. ¶¶ 9, 11, 17–18, 21, 25–26, Exs. 2, 6.)

Second, St. Vincent Salem responded reasonably by investigating Marshall's complaints. In *Berry*, the Seventh Circuit determined an employer was reasonable for beginning a prompt investigation after receiving notice of alleged misconduct within the workplace and redistributing sexual harassment training materials. *See* 260 F.3d at 812–13.

Here, Marshall concedes that Defendants investigated both Marshall's and Putman's complaints by interviewing other employees about her behavior and treatment of Mr. Putman "on several occasions." (Marshall Dep. 82:9–13, ECF No. 36-5 at 40.) Defendants also held private meetings between Marshall, Putman, and hospital executives regarding Marshall's allegations. (Marshall Dep. at 94:22–95:22.) Management for Defendants also conducted staff-wide meetings to discuss sexual harassment policy. (*See* Muntz Decl. ¶ 16, Ex. 4; Compl. ¶ 39, ECF No. 1 at 6.) Under the Seventh Circuit standards set forth in *Berry*, *Saxton*, and *McKenzie*, St. Vincent Salem's response to Marshall's allegations of harassment were reasonable.

Consequently, St. Vincent Salem discharged its duty under Title VII and is entitled to summary judgment on Marshall's hostile work environment claim.

D. *Marshall's Gender Discrimination Claim Fails as a Matter of Law*

Marshall's claim for discrimination based on sex fails because there is no evidence she experienced an adverse employment action because of her gender, and she cannot identify a similarly situated employee who was treated more favorably. To establish a prima facie case of disparate treatment based on sex discrimination, a plaintiff must establish that (1) she is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) a similarly situated individual who was not in the protected class was treated more favorably. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). The Seventh Circuit clarified that summary judgment in discrimination claims should be based on "whether the evidence would permit a reasonable fact-finder to conclude that the plaintiff's [protected status] . . . caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Here, Marshall alleges that, due to her gender, St. Vincent Salem unfairly disciplined her instead of Putman.[4] However, the overwhelming weight of evidence shows that St. Vincent Salem had legitimate, non-discriminatory reasons for

---

[4] Defendants argue that Marshall's discipline does not constitute an "adverse employment action" under Title VII. (*See* ECF No. 35, Def.'s Mot. Summ. J. 20–22.) However, the cases cited by Defendants specifically indicate that discipline that causes economic injury, such as a suspension without pay, constitutes such an action. *See, e.g., Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005) (citing *Markel v. Board of Regents of Univ. of Wis.*, 276 F.3d 906, 911 (7th Cir. 2002)). Thus, Marshall's unpaid suspension in January of 2015 constitutes an adverse employment action.

disciplining Marshall: She consistently ignored their specific directions regarding contact with Putman and appropriate workplace conduct.  (*See* Muntz Decl. ¶¶ 9, 11, 17–18, 21, 25–26, Exs. 2, 6.)

Marshall states that the reasons for disciplining her offered by St. Vincent Salem are pretextual.  "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain" the action.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).  To prove pretext, Marshall must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [St. Vincent Salem]'s proffered reasons that a reasonable person could find them unworthy of credence."  *Boumehdi v. Plastic Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).  If St. Vincent Salem honestly believed the reasons it gave, Marshall loses even if the reasons were foolish, trivial, or baseless.  *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992).

Here, Marshall offers no evidence to support her claim of pretext.  She merely asserts that it is "at best suspicious" that St. Vincent Salem terminated her for "not staying away from [Putman] when she [was] assigned to directly work with him." (Pl.'s Resp. 16, ECF No. 41.)  However, this mischaracterizes the facts.  Marshall's supervisors directed her on at least five separate occasions to avoid contact with Putman unrelated to patient matters.  (*See* Muntz Decl. ¶¶ 8–21.)  The evidence in the record shows Marshall was disciplined and ultimately terminated for continued disregard of these directions.

In fact, the only "evidence" of pretext in this case is Marshall's own assertion that her gender played any role in her termination or discipline. She herself admits that Putman was treated favorably "because of his position" as the only CNRA at St. Vincent Salem, not because of his gender. (Marshall Dep. 182:25–183:9; *see also* Pl.'s Resp. 7, ECF No. 42.) She also alleges that St. Vincent transferred her out of the Surgery Department to save money by replacing her with another nurse, also a female, with a lower salary. (Marshall Dep. 183:8–184:17.) By Marshall's own statements, her gender did not motivate her termination, and she offers no evidence to suggest otherwise.

Additionally, Marshall cannot identify a similarly situated employee who was treated favorably. To satisfy the "similarly situated" prong of a prima facie discrimination case, an employee must be directly comparable in all material respects to the comparators. *Sartor v. Spherion Corp.*, 388 F.3d 275, (7th Cir. 2004). Two employees are similarly situated if they "deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them." *Hanners v. Trent*, 674 F.3d 683, 692–93 (7th Cir. 2012); *see also Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009).

Here, Marshall falls far short of proving that she and Putman engaged in similar conduct without any differentiating or mitigating circumstances. Notably, Putman did not engage in the activities for which Marshall was disciplined or terminated. Muntz' and Potter's contemporaneous notes and statements regarding Marshall's

discipline make this distinction abundantly clear. In each disciplinary instance involving Marshall and Putman, they determined Marshall was the one who acted inappropriately. (*See* Muntz Decl. ¶¶ 9, 11, 15, 18, Exs. 3, 5, and 6.) Marshall presents no evidence that Muntz, Potter, or any other supervisor from St. Vincent Salem ever determined that Putman ignored their orders, inappropriately approached Marshall in the workplace, or made his coworkers uncomfortable in a comparable manner to Marshall. At least because Putman did not engage in similar conduct, he is not similarly situated to Marshall. Without a similarly situated employee, Marshall cannot establish a prima facie case and her discrimination claim must fail.

E. *Marshall's Retaliation Claim Fails Because She Cannot Prove Causation*

A plaintiff may establish a prima facie case for retaliation under either the direct or indirect method of proof. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citing *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008)). Marshall relies on the direct method, which requires "evidence, direct or circumstantial, showing that: (1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered a materially adverse action; and (3) a causal connection exists between the two." *Harper*, 687 F.3d 306 (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006)).

Marshall's claim for retaliation fails because she cannot prove any protected activity caused an adverse employment action. In assessing causation, a court determines whether there is sufficient evidence to permit a reasonable juror to conclude that a retaliatory motive caused the adverse employment action. *See Lord v. High*

*Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Title VII retaliation claims require proving the retaliatory motive was a but-for cause, not merely a motivating factor, for the employer's action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013).

An employee engages in a statutorily protected activity by either: (1) filing a charge, testifying, assisting, or participating in any manner in investigation, proceeding, or hearing under Title VII; or (2) opposing an unlawful employment practice. *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013). "Vague and obscure 'complaints' do not constitute protected activity." *Id.* (citing *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850–51 (7th Cir. 2008)).

Marshall engaged in one instance of protected activity while employed at St. Vincent Salem when she allegedly complained of harassment to Muntz and Potter during the meeting on May 5, 2014. (Marshall Dep. 106:6–111:7.) While Marshall asserts that she complained to her supervisors about "everything" at some point, these generalized complaints do not constitute a protected activity under Title VII. (*See* Marshall Dep. 68:18–69:8, 91:2-22.)

As stated above, Marshall's suspension without pay in February of 2015 and termination in August of 2015 both qualify as adverse employment actions under Title VII. *See supra* note 4. Defendants argue that either event is far too temporally remote from Marshall's May 2014 protected activity to support a reasonable inference of causation. (*See* Def.'s Mot. Summ. J. 22–24, ECF No. 35.) However, the lapse of time does not mean that Marshall is "precluded from making out a prima facie case

of retaliation, but rather that additional proof of a causal nexus is necessary." *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (citing *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 n.6 (7th Cir. 1996)).

Here, however, Marshall provides no admissible evidence to rebut St. Vincent Salem's non-retaliatory reasons for both suspending and firing her. *See supra* pp. 20–22. Just as there is no evidence that Marshall's gender motivated St. Vincent Salem's actions, there is no evidence that her complaints about Putman did either. Without such evidence, Marshall cannot establish but-for causation required to make out a prima facie case of retaliation.

F. *Marshall Waived Opposition to Summary Judgment on Her IIED Claim*

Defendants moved for summary judgment on Marshall's IIED claim. (Def.'s Mot. Summ. J. 26–28, *See* ECF No. 35.) Marshall did not respond to these arguments. Thus, Marshall has waived arguments in opposition and summary judgment in favor of Defendants is required for this claim. *See Caruso,* 197 F.3d at 1197; *Lovchik,* 830 F. Supp. 2d at 614.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 34) is **GRANTED** for all claims.

Dated: 7/25/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Emily L. Connor
LITTLER MENDELSON, P.C. (Indianapolis)
econnor@littler.com

Michael Shaun Dalrymple
michaeld@dalrymple-law.com

Alan L. McLaughlin
LITTLER MENDELSON, P.C. (Indianapolis)
amclaughlin@littler.com